IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**ROBERTA L. CASADOS,**

        **Plaintiff,**

**v.**                                                      **No. CIV 02-31 BB/JHG**

**LAS CRUCES PUBLIC SCHOOLS, and ELISABETH MARRUFO, CHARLES WHITE, and KATHY EASTERLING, in their individual and official capacities,**

        **Defendants.**

MEMORANDUM OPINION
AND
ORDER GRANTING SUMMARY JUDGMENT

        **THIS MATTER** is before the Court on Defendants' motion for summary judgment, and the Court having considered all matters submitted, finds the motion is well-taken and it will be GRANTED.

**I.**    *Facts*

        In the Fall of 1999, the Plaintiff, Roberta Casados, was in the second year of a three-year probationary period teaching special education at Sunrise Elementary School in Las Cruces. Defendant, Elisabeth Marrufo, was the Principal of Sunrise. Defendant, Kathy Easterling, was the Director of Special Education for the Las Cruces Public

Schools ("Schools").  Defendant, Charles White, was the Associate Superintendent for Human Resources and Employee Relations for the Schools.

During the 1998-99 school year, Plaintiff had the benefit of an educational assistant.  However, Sunrise had experienced problems in achieving acceptable reading levels on the New Mexico Achievement Assessment and attempted to address this problem by reassigning the educational assistants to tutor below average reading students during the first semester of 1999-2000.

On November 19, 1999, one of Plaintiff's female students was sexually harassed by another student in Plaintiff's classroom.  Principal Marrufo was advised of the situation and spoke with the parents of the students who engaged in the unacceptable behavior.  Plaintiff discussed with the girl's parents not only the issues of sexual harassment in the classroom but also the lack of an educational assistant.  The girl's parents contacted the New Mexico State Department of Education, Special Education Unit, about these issues.

Plaintiff had seven D-level special education students and two C-level special education students.  On November 23, 1999, Plaintiff requested a full-time teaching assistant arguing her student load was higher than allowed by the New Mexico Board of Education Rules of Student/Staff Ratios.  Principal Marrufo met with Plaintiff in an effort to address the problem and requested that Ms. Easterling conduct a review of Plaintiff's caseload.  Director Easterling recommended that an additional certified

2

**special education teacher be provided to Sunrise Elementary and that Plaintiff's student load be reduced. This was done.**

**During January and February 2000, Plaintiff again requested a special educational assistant. On February 2, 2000, Principal Marrufo requested a meeting with Plaintiff. Plaintiff stated she would only attend a meeting with the Principal with her attorney. The meeting was between Plaintiff, Ms. Marrufo, the Assistant Principal, the Director of Elementary Curriculum/Reading, and Ms. Easterling specifically to discuss Plaintiff's workload. Plaintiff's student load was again reduced from eight to six students. Plaintiff said it was unfair to request students be transitioned to other classrooms because of the hardship it would cause. Plaintiff also said that the parents must be notified and participate in a Team decision as to the best possible educational situation for the child. The Defendants advised Plaintiff that such parental notification was an administrative decision, and Defendant Easterling specifically advised Plaintiff not to notify the parents of the students chosen to be moved. In response to the selection by the Administration of two students to be removed from Plaintiff's classroom, Plaintiff nonetheless sent the students' parents notification. After a meeting with Defendant White, Plaintiff was suspended on February 11, 2000, and reinstated February 23.**

**At a second meeting on February 4, Ms. Easterling proposed yet another option to-wit: that Plaintiff's caseload be alleviated by transferring two students out of her classroom to classrooms where there were special educational assistants. Defendant**

Easterling suggested that transferring the two students would reduce the student/teacher ratio in Plaintiff's classroom in order to facilitate improved learning for her students.

On March 22, 2000, Plaintiff conducted an IEP meeting in which she failed to follow IEP protocol and criticized the Administration's dealings regarding the educational assistant issue to the attending parent. Thereafter, Defendant Marrufo and others conducted another evaluation of Plaintiff's caseload and her classroom. The evaluation resulted in a recommendation that a full-time educational assistant be placed back in Plaintiff's classroom, and this was done on April 3.

On April 19, 2000, Plaintiff was notified her contract would not be renewed for the following year.

II.   *Issues*

Since Defendants have raised qualified immunity, the Plaintiff must carry the burden of establishing Defendants violated clearly established law. Plaintiff argued her repeated requests for a full-time educational assistant were entitled to First Amendment protection and her termination is in violation of her free speech right.

III.   *Analysis*

It is firmly established that "'a public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech.'" *Lybrook v. Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334 (10th Cir. 2000), quoting *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998); *see also Bertot v. School Dist.*, 522

F.2d 1171 (10th Cir. 1975). Whether this occurred in a given situation is based on the analysis derived from *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). First, the court must determine whether the employee's speech involves a matter of public concern. *Connick v. Myers*, 461 U.S. 138 (1983); *Lybrook*, 232 F.3d at 1334. If so, the court then balances the employee's interest in commenting upon matters of public concern against the interests of the state "as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. at 146. The employee's speech is protected if the employee's interest outweighs the interest of the employer. *Lytle v. City of Haysville*, 138 F.3d 857, 862 (10th Cir. 1998). However, if the balance tips in favor of the employee, the employee must then also show that the speech was a substantial or a motivating factor in the employer's decision to terminate. *Gardetto v. Mason*, 100 F.3d 803 (10th Cir. 1996). Finally, if the plaintiff makes such a showing, the employer may nonetheless prevail if it can demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. *Gardetto*, 100 F.3d at 811.

The initial inquiry, then, is whether Plaintiff's repeated demand for an educational assistant involves a matter of public concern protected by the First Amendment. In this case it need go no further. "A public employee may not invoke the protection of the First Amendment for every statement that he makes while on the state payroll." *Bunger v. University of Okla. Bd. of Regents*, 95 F.3d 987, 991 (10th Cir. 1996).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-8.  When the Court reviews the content, form, and context of Plaintiff's statements on the whole record, it is clear her battle to obtain a teacher's assistant was strictly personal and not a warning to the public.  Plaintiff's comments "were not intended to disclose evidence of wrongdoing, inefficiency or malfeasance, ... but related to an internal personnel dispute." *Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998).

Defendants had the responsibility of attempting to deploy limited resources to best address the needs of all students at Sunrise.  Defendant Marrufo decided to deny Plaintiff an educational assistant so that the assistants could be assigned to tutor reading.  Plaintiff was insistent and adamant her student mix and load required she be provided a teaching assistant.  Defendants met with Plaintiff repeatedly and addressed her concerns by decreasing her student load.  But Plaintiff remained adamant she was entitled to an assistant and attempted to enlist various parents in her battle by informing them that when untoward events occurred, or their students were being transferred, it was because she had no assistant.

The Tenth Circuit affirmed a directed verdict on similar facts in *Saye v. St. Vrain Valley School District*, 785 F.2d 862 (10th Cir. 1986).  In that case, as in the present, the plaintiff was a probationary employee teaching special education.  At the beginning of

plaintiff's third year, the principal restricted plaintiff's access to a teacher's aide. Plaintiff then worked out a different teacher's aide arrangement which caused serious faculty unrest. She also discussed the limits on aide time with mothers, one of whom got in touch with the director of special education. The principal (also a defendant) then set up a meeting to consider alternatives to the teacher's aide time. In January the principal indicated plaintiff's inappropriate involvement of parents in the proper allocation of aide time would be a basis for her recommendation that plaintiff not be renewed. Plaintiff filed a union grievance.[1] The superintendent and school board followed the recommendation, and plaintiff brought suit alleging she was not renewed for exercising her First Amendment rights by informing affected parents of a matter of public concern.

The district court granted a directed verdict. The Tenth Circuit recognized it was required "to make 'an independent constitutional judgment' on whether, under the particular circumstances, the statements at issue are constitutionally protected." 785 F.2d at 865 quoting *Connick*, 461 U.S. at 150 n. 10. Speaking for the Court, Judge Seymour said:

> The trial court questioned whether the speech at issue here concerned a matter of public importance. We agree. The allocation of aide time among teachers is not a matter

---

[1] The plaintiff in *Saye* was also involved in substantial union activity which the Tenth Circuit found presented a legitimate jury issue. *See also Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434 (10th Cir. 1990).

> inherently of public concern. *See id.* at 1691 n. 8. Moreover, Saye did not raise the aide issue in a public forum, nor did she challenge the total amount of aide time as inadequate. The circumstances in which the discussions here occurred indicate that Saye's speech, like that in *Connick*, was a mere extension of her dispute with Ploussard over the amount of aide time *she* had been given, *see id.* at 1690, and an attempt "to gather ammunition for another round of controversy with her superiors," *id.* at 1691. These factors strongly indicate that Saye was speaking "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest ...." *Id.* at 1690.

785 F.2d at 866.

More recently, though obviously not of the same level of precedent, a district court in Texas also found no speech of public concern on analogous facts. In *Carey v. Aldine Independent School District*, 996 F. Supp. 641 (S.D. Tex. 1998), yet another probationary special education teacher brought suit over class size and aide assignments. As in the present case, the teacher complained to school officials that the law required she be given an aide and moreover told the principal "the newspaper could get her in trouble" on the issue. 996 F. Supp. at 644. Plaintiff's husband also called the Aldine special education department to complain plaintiff had too many students.

The school district did not renew plaintiff's contract and plaintiff alleged it was in retaliation for her exercise of a First Amendment right to speak on matters of public concern. The court first set out the legal framework:

> The courts have recognized that "[b]ecause almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance

8

>of the matters discussed by the employee.  Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as employee.  In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment."

**996 F. Supp. at 647 quoting *Terrell v. University of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986) (citations omitted).**

In granting summary judgment for the school board, the court concluded:

>Applying these standards to the present case makes it clear that Carey's complaints do not, as a matter of law, pertain to matters of public concern.  Carey's complaints about too many students in her class during the first six weeks of school; inadequate supplies; inadequate time devoted by the aide; denial of a "rightful" conference period, planning time, or lunch period; and the failure of the school to carry out the IEPs for some of Carey's students, resulting in their spending additional time in her class, [FN4] all focus on the effect of these actions on Carey and her working conditions.  Such complaints do not cross the threshold the cases require to state a First Amendment claim....  Carey complained that the special education aide assigned to her class did not spend the allotted number of hours in Carey's class and instead taught regular students.  Carey "asked for the aid [sic], Mrs. Duke, to be in my room the entire day as she was getting paid for from special education funds."  Carey's complaints were not a publicized call for change; they were complaints to her immediate supervisor and the special education consultant about how the conditions in her classroom and at her workplace affected her.

**996 F. Supp. at 648-9.**

**The record in the case at bar is equally clear that Plaintiff's repeated complaints about the necessity of an educational assistant in her classroom "were not a publicized call for change; they were complaints to her immediate supervisor and the special education consultant about how the conditions in her classroom and at her workplace affected her." 996 F. Supp. at 649. Plaintiff did nothing to publicly expose "wrongdoing, inefficiency or malfeasance," but all her complaints related entirely to an internal personnel dispute.** *Lancaster*, **149 F.3d at 1234.**

**Given the Court's ruling, Defendant Easterling's arguments based on her non-involvement in the renewal decision are moot.**

### O R D E R

**Based on the above, Defendants' motion for summary judgment is GRANTED, and the case is DISMISSED.**

**Dated at Albuquerque this 9th day of October, 2002.**

                                                                                   _____
                                                                                   **BRUCE D. BLACK**
                                                                                   **United States District Judge**

**For Plaintiff:**

    Regina R. Sewell, SANDENAW CARRILLO & PIAZZA, Las Cruces, NM

**For Defendants Marrufo, White & Easterling:**

    William R. Babington, Jr., HOLT & BABINGTON, Las Cruces, NM